UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BRANDON MEJIAS,

                Petitioner,

     - against -

MICHAEL J. ALLARD, Superintendent,

                Respondent.
----------------------------------------------------------X

**NOT FOR PUBLICATION**

<u>MEMORANDUM AND ORDER</u>

03-CV-5195 (NGG)(LB)

GARAUFIS, District Judge.

      On September 13, 2005, Magistrate Judge Lois Bloom issued a Report and Recommendation ("R&R") recommending that the petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 be denied. Petitioner timely submitted objections to the R&R on November 10, 2005.[1] Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, this court makes a *de novo* review of all portions of the R&R to which the respondent specifically objected. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Familiarity with the facts of the case and the holdings of the R&R is assumed.

      After a *de novo* review, this court adopts the R&R in its entirety.

**I.    BACKGROUND**

      In April 1998 Valeriy Shevchenko returned to his apartment in Brooklyn, New York and found that the front door was open and its lock destroyed. (Trial Transcript ("Tr.") 16, 19.) Shevchenko entered the apartment and encountered two dark-complexioned men, one tall, the other of smaller build and lighter skin. (Tr. 19-21.) Shevchenko ran out of the building and

---

[1] I granted an extension to Petitioner to file objections to the R&R no later than November 10, 2005.

called for help as the two men fled. (Tr. 23.) Shevchenko ran after the shorter man and signaled for help from nearby firefighters who caught the individual, Petitioner Brandon Mejias ("Petitioner" or "Mejias"), and held him at the local firehouse. (Tr. 24-26, 66.)

Police officers arrived at the firehouse and interviewed Shevchenko, who described the above circumstances and identified Petitioner as one of the assailants. (M-D. 7, 9-10;[2] Tr. 69.) The officers recovered from Mejias $317, an address book, and a clear plastic door jimmy, and placed Mejias under arrest. (M-D. 9.) An officer accompanied Shevchenko to his home, where Shevchenko identified as missing two wallets, a telephone receiver, and some jewelry. (M-D. 10; Tr. 27-29, 90.)

On February 3, 1999, the Honorable Gustin L. Reichbach of Supreme Court, Kings County held a Mapp-Dunaway hearing, and ruled that the evidence established probable cause to arrest Petitioner for attempted burglary and trespass, and denied the defense counsel's motion to suppress the property retrieved from Petitioner. (M-D. 14.)

At trial, Petitioner was charged with burglary in the second degree, criminal trespass in the second degree, criminal mischief in the fourth degree, petit larceny, and possession of burglar's tools. The prosecution presented the testimony of Shevchenko, a district attorney, fingerprint experts, and one of the firemen who apprehended Petitioner. Shevchenko identified Petitioner as the apprehended assailant who he chased out of his building, and testified that he had never seen Petitioner prior to this incident and that he suspected that his downstairs neighbor, Yvonne Medina, provided Petitioner with a key to the building. (Tr. 23, 44, 46.) The fireman

---

[2] "M-D. __" refers to pages of the Mapp-Dunaway hearing transcript, dated February 3, 1999.

2

identified Petitioner as the apprehended assailant. (Tr. 68.) Medina, testifying for the defense, admitted that Petitioner was a friend of hers and that he had use of her keys to access the building. (Tr. 130.) Executive District Attorney Sheryl Anania testified that in a pre-trial interview with Medina, that Medina admitted that Petitioner was in the building on the day of his arrest, and that Petitioner called her from jail and said that he ran when he saw the police and was apprehended. (Tr. 148, 166.)

After closing argument, the judge issued a jury instruction on the definition of acting in concert:

> The law provides that "when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes or intentionally aids such person to engage in such conduct."
>
> Now culpable mental state means intentionally or knowingly[, d]oes he know and does he intend to aid the active participants in any way[.]

(Tr. 246.)

> The judge further described by analogy the legal concept of acting in concert:
>
> Let us assume you go to a concert at Lincoln Center. The conductor is up front waving his baton throughout the concert on stage, the brass, the drummer is most active; but over in the corner there is a fellow with a triangle. Maybe once or twice during the entire number he will hit the triangle. He is acting in concert with his fellow musicians even though he did not work as hard as the musicians who play the strings or brass. He is part of the concert. He is assisting in the making of that music despite his minimal participation.
>
> On the other hand, you are sitting there in the audience. You are witnessing this, but you are not participating and not involved in any way in the making of the music.
>
> Mere presence at the scene of the concert makes no one a participant any more than mere presence at the scene of a crime. You must remember that any

> participation, no matter how slight, if it is done knowingly, does make one a
> participant and responsible for the acts of others.

(Tr. 246-47.)

After deliberation, the jury found Petitioner guilty of one count of burglary in the second degree, one count of possession of burglar's tools, one count of petit larceny in the fourth degree, and one count of criminal mischief in the fourth degree. (Sentencing Transcript, February 26, 1999, ("S.") at 5-6.) He was sentenced to concurrent sentences of ten years for burglary, ten years for possession of burglar's tools, and one year for petit larceny. (Id.)

Petitioner appealed his conviction to the Supreme Court, Appellate Division, Second Department, which found that the evidence "was legally sufficient to establish [Petitioner's] guilt beyond a reasonable doubt," that the trial court "correctly instructed the jury with respect to the issue of intent," that petitioner's "arguments regarding alleged prosecutorial misconduct are largely unpreserved for appellate review," and that Petitioner's remaining contentions were without merit. People v. Mejias, 296 A.D.2d 583, 583-84 (2002). On November 22, 2002, the New York Court of Appeals denied Petitioner leave to appeal. People v. Mejias, 99 N.Y.2d 537 (2002).

On September 6, 2003, Petitioner filed a *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254, asserting that: (1) he was denied a fair trial due to prosecutorial misconduct; (2) the trial court's charge to the jury on accomplice liability was deficient; (3) the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt; (4) he was improperly excluded from participating in sidebar conferences at trial; (5) the court improperly limited the cross-examination of two witnesses; (6) the court wrongfully admitted evidence

4

recovered after his arrest which was irrelevant to the crimes charged; and (7) the court erred in permitting the prosecutor to elicit certain testimony from the complainant. (Pet. ¶ 13.)

On September 28, 2005, Magistrate Judge Lois Bloom issued a Report and Recommendation ("R&R"), recommending that the Mejias's Petition be denied. (R&R at 29.) In her report, Judge Bloom found that all of Petitioner's arguments lacked merit except that she found that the jury charge on accessorial liability violated state law, and violated Petitioner's due process rights.[3] However, she concluded that the violation amounted to harmless error as articulated by the Supreme Court in Brecht v. Abramson, 507 U.S. 619, 637 (1993). (R&R at 16-19.) In this Memorandum and Order, I adopt the discussion and conclusions of Judge Bloom's learned and thorough R&R, and shall proceed to discuss only those specific issues that Petitioner raised in his objections to the R&R.

## II. DISCUSSION

In the instant objections to the R&R, Mejias objects to the R&R conclusion that the jury charge on accessorial liability amounted to harmless error. Specifically, Mejias draws the attention of this court to Judge Bloom's conclusion that the jury instruction on accessorial liability was incorrect, and that the error violated his due process rights, and argues that this error

---

[3] The R&R also concluded that (1) Petitioner's allegation of prosecutorial misconduct was procedurally barred, and could not have rendered the trial "fundamentally unfair," Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974) (R&R at 8-11); (2) the evidence adduced at trial was constitutionally sufficient to prove that Petitioner was guilty of the crimes for which he was convicted (R&R at 19-21); (3) Petitioner's federal constitutional rights were not violated when the judge excluded him from sidebar conferences (R&R at 21-23); (4) the court's limitation of the defense's cross-examination of Shevchenko and Anania did not violate the Petitioner's rights under the Confrontation Clause (R&R at 23-26); (5) that the Petitioner's Fourth Amendment claim is barred by Stone v. Powell, 428 U.S. 465, 494 (1976) (R&R at 26-27); and (6) that the admission of Shevchenko's police complaint report was not shown to be erroneous, and so could not be the basis of review under Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). (R&R at 27-29.)

compels this court to grant a writ of habeas corpus because it "so infected the entire trial that the resulting conviction violates due process." (R&R Objections, dated Oct. 30, 2005 ("Ob.") at 10 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).)

As a predicate matter, Judge Bloom correctly concluded that the trial court's jury charge on accessorial liability was defective, and that this error violated the Petitioner's right to due process. The jury was required to consider whether Petitioner aided or encouraged another to engage in the charged acts, and whether he intentionally aided his accomplice in committing the crimes. N.Y. Penal Law § 20.00; (R&R at 12). The charge, which instructed that an accessory "intend[s] to aid the active participant in any way," (Tr. 246) misstated the twin requisite mental states of accessory liability: that the petitioner possessed the "requisite intent for the commission of those crimes," *in addition to having engaged in* "deliberate conduct to bring them about." People v. Rosado, 244 A.D.2d 772, 773 (1997); (R&R at 13.) The judge's analogy was also flawed, because it is silent on the necessary intent by the participant to further the illicit act. The analogy of the musician and the audience in a concert does not distinguish between a participant with intent to commit the act, in this case a musician who plays an instrument in order to further the musical ensemble, and the participant who does not, e.g. a musician who plays music in the orchestra but not in order to further the musical ensemble. In its silence, the jury instruction and analogy suggest that Mejias's participation and knowledge of his participation is sufficient to convict him as an accessory without the requisite finding of a mental state necessary for the commission of the charged acts. (R&R at 13.) This was incorrect.

I also concur with Judge Bloom that the trial court's incorrect jury instructions violated Mejias's due process rights, which require that the prosecution "prove[] beyond a reasonable

doubt every element of the charged offense." (R&R at 15 (quoting Carella v. California, 491 U.S. 263, 265 (1977).)

However, the Constitution does not "require[] a blanket rule of automatic reversal in the case of constitutional error." Brecht v. Abramson, 507 U.S. 619, 630 (1993). Even after a finding of a constitutional error, a writ of habeas corpus shall only issue if the error was structural in nature, Neder v. United States, 527 U.S. 1, 8 (1999) or had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Id. at 637.

Mejias urges this court to depart from the R&R and find that the incorrect charge was a "structural error" properly examined under Chapman v. California, 386 U.S. 18, 24 (1967) (Ob. 4-10, 16), and that in the alternative, subjecting this error to harmless error review requires reversal under Brecht. (Ob. 10-20.) Both of these arguments are without merit.

Petitioner first argues that an incorrect jury instruction automatically requires reversal. (Ob. 10-12.) However, the Supreme Court has held that an error is "structural" and compels reversal only if it defies harmless error review because it is a "defect affecting the framework in which the trial proceeds, rather than simply an error in the trial process itself." Neder, 527 U.S. at 8 (internal quotation omitted). The Court in Neder foreclosed the Petitioner's argument that the omission of an element of the offense is such a "structural" error: "unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocense." Id. at 9 (emphasis in original); see also California v. Roy, 519 U.S. 2, 5 (1997) (per curiam). As a result, this court must subject the jury instruction to harmless error review and decide whether it agrees with the R&R's conclusion that

7

the incorrect jury instruction had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht, 507 U.S. at 637. Such an effect is found where "a properly instructed, rational jury would have found the [omitted] element . . . beyond a reasonable doubt." Peck v. United States, 106 F.3d 450, 454 (2d Cir. 1997) (quoting O'Neal v. McAninch, 513 U.S. 432, 445 (1995)).[4]

I find that the R&R correctly found that a rational, properly instructed jury would have found the omitted element beyond a reasonable doubt. (R&R at 18-19.) One witness testified that Petitioner had a set of keys to the building. (Tr. 130.) Multiple witnesses identified Petitioner as the assailant chased by Shevchenko out of the apartment and apprehended by the police. (Tr. 23, 44, 46, 68.) Petitioner in custody was found to have burglary tools and a substantial amount of money in his possession. (M-D. 9.) Under the circumstances, the jury justifiably concluded that Petitioner unlawfully entered Shevchenko's apartment. Accordingly, I adopt the R&R conclusion that a rational, properly instructed jury would have found the requisite intent beyond a reasonable doubt.

To the extent that Mejias makes reference in his objections to other arguments in his Petition, I find that the R&R thoroughly addresses each of them and I fully adopt the R&R's conclusions with respect to them.

### III. CONCLUSION

For the reasons discussed above, this court adopts Magistrate Judge Bloom's R&R in its

---

[4] I agree with Judge Bloom's analysis in her R&R that the instant Petition is reviewed under the Brecht harmless error test rather than the "harmless beyond a reasonable doubt" standard in Chapman v. Roy, 386 U.S. 18, 24 (1967). (R&R at 16-18.) Moreover, I find that the jury instruction in the instant petition is not "harmless beyond a reasonable doubt" for the same reasons that a writ would not issue under the Brecht test.

8

entirety.  Mejias's petition for a writ of habeas corpus is DENIED.  As Mejias has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.  See 28 U.S.C. § 2253(c)(2); Lucidore v. N.Y.S. Div. of Parole, 209 F.3d 107, 111-13 (2d Cir. 2000).  Pursuant to 28 U.S.C. § 1915(a)(3), the court also certifies that any appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 444 (1962).

SO ORDERED.

Dated: January __, 2006  
      Brooklyn, New York

\s\  
NICHOLAS G. GARAUFIS  
UNITED STATES DISTRICT JUDGE